In the Matter of the Estate of JOHN RUSSO.

*Orphans' Court, New Castle, January 14, 1942.*

LAYTON, Judge, sitting.

*Januar D. Bove, Jr.*, for petitioner.

---

[1] "Every common carrier by railroad * * * shall be liable in damages to any person suffering injury * * * or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee * * *."

Joseph A. Julian, Jr., for minors.

LAYTON, Judge: I felt it necessary to appoint counsel to represent the interests of the two minor children in this proceeding and as the result of argument and briefs filed for the respective parties, a single question is presented for decision, viz.: Should a fund representing a voluntary and unauthorized settlement with a common carrier under the *Federal Employers' Liability Act,* resulting from a claim for death, be distributed under the intestate laws of this state or in accordance with the actual pecuniary loss sustained by the dependents of the deceased?

In *Gulf, C. & S. F. R. R. Co. v. McGinnis,* 228 *U. S.,* 173, 33 *S. Ct.* 426, 427, 57 *L. Ed.* 785, the Supreme Court of the United States said this:

"The statutory action of an administrator (under the Act) is not for the equal benefit of each of the surviving relatives for whose benefit the suit is brought. Though the judgment may be for a gross amount, the interest of each beneficiary must be measured by his or her individual pecuniary loss. That apportionment is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no pecuniary loss."

Compare *American R. R. Co. of Puerto Rico v. Didricksen,* 227 *U. S.* 145, 33 *S. Ct.* 224, 57 *L. Ed.* 456; *Taylor, Administratrix, v. Taylor,* 232 *U. S.* 363, 34 *S. Ct.* 350, 58 *L. Ed.* 638. And the rule has been followed consistently in the federal and state courts both in the trial of actions for recovery under the Act and in situations where offers of settlement by a common carrier have been brought befor a court for approval. *Haidacker v. Central R. R. Co. of New Jersey,* (D. C.), 52 *F. Supp.* 713; *Tumolo v. Reading Co.,* (D.C.), 52 *F. Supp.* 956; *In re Badgett,* 226 *N. C.* 22, 36 *S. E. 2d* 658, 171 *A. L. R.* 201. Curiously enough, however, in instances such as here, where a personal representative has made a voluntary settlement under the Act without first seeking court approval, a number of state courts have resolved disputes involving the proper disposition of the settlement fund by directing its distribution in

accordance with the intestate laws of the state. *In re Badgett, supra.* *In re Smith's Estate,* 191 *Tenn.* 69, 231 *S. W.* 2*d* 569; See also annotation *A. L. R. Vol.* 171, *p.* 206 and cases there cited.

The reasons suggested in these latter decisions for departing from the settled rule of the federal courts seem to be these. First, it is said that the Federal Employers' Liability Act does not require distribution of a fund in any particular manner, thus leaving it for the courts of the several states to dispose of in accordance with their own laws. Secondly, they reason that because the fund has come into the hands of the personal representative without instructions (by way of jury verdict or a court order) as to the manner of distribution, the intestate laws furnish the only remaining method for disposing of the fund.

As to the first ground, it may be said that the Supreme Court of the United States has construed the Act to mean that a fund recovered by way of judgment or compromise is for the benefit of those named dependents who have suffered pecuniary loss as a result of the death involved. This construction is as much a part of the Act as though written therein in so many words. As to the second ground, the fund, even though received by the personal representative by way of a voluntary and unauthorized settlement, remains for distribution, not as part of decedent's estate, but in accordance with the construction of the Act given by the highest federal court. The personal representative merely holds the fund in trust for distribution among certain readily ascertainable beneficiaries in accordance with the pecuniary loss sustained by each. It is his duty to have the matter of the distribution of the fund raised in some appropriate proceeding such as, for instance, the case at bar. To distribute the fund by the intestate laws would in many instances serve to defeat completely the purposes of the Act.

For the reasons given, I am of the opinion that

the method of distribution announced in the federal cases above cited should be followed in this court. Accordingly, the interests of the minors will be determined in accordance with their respective pecuniary losses and the balance will automatically belong to petitioner, the decedent's widow. In this connection, a hearing will be held and the American Experience Tables of Mortality concerning life expectancies may be used as a guide in determining the pecuniary loses sustained. Other evidence relevant to this issue may, of course, be introduced.

I decline either to approve or disapprove the settlement as prayed. It is an accomplished fact and both the guardian and common carrier must abide the legal consequences, if any, of having dispensed with court approval in and about the consummation of the settlement.